1
2
3
4   **E-FILED on**    9/18/07
5
6
7
8   IN THE UNITED STATES DISTRICT COURT
9   FOR THE NORTHERN DISTRICT OF CALIFORNIA
10   SAN JOSE DIVISION
11

12   ROBERTO RUIZ,                              No. C-06-04534 RMW

13                    Plaintiff,

14          v.                                  ORDER DENYING PLAINTIFF'S MOTION
                                                FOR SUMMARY JUDGMENT
15   ATLANTIC MUTUAL INSURANCE
     COMPANY,                                   **[Re Docket Nos. 16, 25]**
16
                     Defendants.
17

18

19          Plaintiff Roberto Ruiz moves for summary judgment that defendant Atlantic Mutual

20   Insurance Company ("Atlantic Mutual") is not entitled to reduce its policy limits by the amount of

21   workers' compensation benefits paid to Roberto Ruiz and that Atlantic Mutual is not entitled to a

22   reduction in the full amount of a prior settlement received by Ruiz and his wife because a portion of

23   that settlement was paid as a reimbursement to workers' compensation.  For the reasons set forth

24   below, the court denies plaintiff's motion.

25
26
27
28

United States District Court
For the Northern District of California

# I. BACKGROUND[1]

**A.     The Accident**

On October 7, 1997, Ruiz, then a delivery driver for Fast Undercar, was involved in a motor vehicle accident while driving a company vehicle.  His vehicle was hit from behind by a vehicle driven by Cristobal Tavares.  Tavares also struck a van which was owned by Group Manufacturing, Inc., and insured by defendant Atlantic Mutual.  Ruiz was not injured as a result of the first accident. However, after leaving his car to exchange information with the driver of the van, he was struck from behind by a minivan driven by Alma Ogana.  Ruiz sustained serious bodily injury and has not been employed since the accident.  Ruiz's wife, Anna Maria, who was working as a nanny, left her job to take care of Ruiz and has likewise not returned to work.

**B.     Atlantic Mutual Policy**

Atlantic Mutual issued business auto insurance policy No. 480 30-30-21 to Group Manufacturing, Inc., from August 1, 1997 to August 1, 1998 ("the Policy").  The Policy includes uninsured/underinsured motorist coverage limits of $1,000,000.

> A. Coverage
> We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle."  The damages must result from "bodily injury" sustained by the "insured caused by an "accident."  The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle."

**C.     Prior Actions**

On July 21, 1998, the Ruizes filed a personal injury action in Santa Clara Superior Court, *Ruiz v. Group Manufacturing, et al.*, Case No. CV775232 ("the Personal Injury Action") that resulted in recovery of $65,000 in settlement monies from Tavares's and Ogana's insurers.  Ruiz also filed a workers' compensation claim, *Ruiz v. Fast Undercar, Inc.*, WCAB No. SJO 0196729, and recovered a total of $483,594.

Ruiz also filed an action against Atlantic Mutual and American States, the insurers of other vehicles involved in the accident seeking coverage under their policies; both insurers denied his claim.  The California Court of Appeal ultimately determined that Ruiz qualified as an insured

---

[1]     The facts of the case are generally undisputed.

driver under the Atlantic Mutual policy. *Atlantic Mutual Ins. Co. v. Ruiz*, 123 Cal. App. 4th 1197 (2004). In accordance with that determination, Atlantic Mutual paid Ruiz $451,406, which is equal to the $1,000,000 policy limit less the settlement payments received by the Ruizes ($65,000) and the workers' compensation and other payments received by Ruiz ($483,594).

## II. ANALYSIS

The parties do not dispute that the Policy has policy limits of $1,000,000. Plaintiff has received $243,254 in medical payments, $40,340 in temporary disability, $200,000 in a final workers' compensation award, and $65,000.00 in a settlement from the uninsured motorist for a total of $548,594 in recovery from the accident. Atlantic Mutual paid $451,406.00, an amount equal its policy limits minus the $548,594 plaintiff recovered from other sources. Atlantic Mutual asserts that this payment fulfils its obligation to plaintiff as an insured. Plaintiff asserts that Atlantic Mutual is not entitled to offset from its policy limits (1) plaintiff's workers' compensation benefits and (2) the full amount of the settlement from the Personal Injury Action because a portion of the settlement was used to refund workers' compensation.

### A.      Workers' Compensation Offset

The parties' first dispute centers around whether the Atlantic Mutual is entitled to offset the amount of workers' compensation received by plaintiff. Specifically, plaintiff seeks a declaration that the Atlantic Mutual policy does not provide for an offset of his workers' compensation recovery.[2]

California Insurance Code section 11580.2(h) provides in relevant part: "Any loss payable under the terms of the uninsured motorist endorsement or coverage to or for any person may be reduced: (1) by the amount paid and the present value of all amounts payable to him . . . under any workers' compensation law, exclusive of nonoccupational disability benefits." As used in the Insurance Code, the word "shall" is mandatory and the word "may" is permissive. Cal. Ins. Code § 16. Section 11580.2(h) gives the parties to an insurance policy the right to contract for the reduction of policy benefits by the amount of workers' compensation benefits received by the insured, but it

---

[2] The parties do not appear to dispute that Atlantic Mutual is entitled to offset the amounts received by Ruiz for medical payments and temporary disability. The parties also appear to agree that additional amounts due to plaintiff, if any, will be determined in arbitration.

does not confer the right to a deduction absent a specific provision in the policy.  *Waggaman v. Northwestern Security Ins. Co.*, 16 Cal. App. 3d 571, 579 (1971).  Section 11580.2(p)(4) provides an offset for undersinsurance coverage:  "When bodily injury is caused by one or more motor vehicles . . . the maximum liability of the insurer . . . shall not exceed the insured's underinsured motorist coverage limits, less the amount paid to the insured by or for any person or organization that may be held legally liable for the injury."

Plaintiff contends that there is no language in the Policy that provides for an offset for the amount of his workers' compensation recovery.  Failure to provide for a reduction in the policy generally precludes an insurer for claiming such a reduction.  *See, e.g., Cannizzo v. Guarantee Ins. Co.*, 245 Cal. App. 2d 70, 73-74 (1966) ("We conclude that in the absence of a specific provision in the policy in the instant case, appellant is not entitled to a setoff for the medical benefits paid to respondent.").  The Policy here provides the following limits of insurance:

> D. Limit of Insurance
>
> 1. Regardless of the number of covered "autos", "insured", premiums paid claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit of Insurance for Uninsured Motorists Coverage shown in the Declarations.
>
> 2. For a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle," our Limit of Insurance shall be reduced by all sums paid because of "bodily injury" by or for anyone who is legally responsible, including all sums paid or payable under this policy's Liability Coverage.
>
> 3. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage and any Liability Coverage form or Medical Payments Coverage endorsement attached to this Coverage Part.
>
> We will not make a duplicate payment under this Coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.
>
> We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

Policy at ATL 159-60.  Plaintiff contends that because section D.2 above does not specify that the Limit of Insurance is to be reduced by any workers' compensation recovery, the Policy does not

United States District Court
For the Northern District of California

1   permit Atlantic Mutual to offset the amount of workers' compensation plaintiff received following

2   the accident from the $1,000,000 policy limit.  Atlantic Mutual contends, however, that the language

3   in D.2, "all sums paid because of 'bodily injury' by or for anyone who is legally responsible,"

4   includes workers' compensation.  Plaintiff asserts, however, that this provision cannot be read to

5   permit a setoff of workers' compensation payments because workers' compensation is not a sum paid

6   or payment made "by or for anyone who is legally responsible."

7          First, plaintiff argues that the difference in the language of the second and third sentences of

8   D.3 demonstrates that "anyone who is legally responsible" cannot refer to workers' compensation.

9   The second sentence of D.3 provides:

10              We will not make a duplicate payment under this Coverage for any
                element of "loss" for which payment has been made by or for anyone
11              who is legally responsible.

12  while the third sentence of D.3 provides:

13              We will not pay for any element of "loss" if a person is entitled to
                receive payment for the same element of "loss" under any workers'
14              compensation, disability benefits or similar law.

15  Plaintiff points out that the section D.3 refers separately to payment made "by or for anyone who is

16  legally responsible" and payment for elements of loss "under any workers' compensation law."  This,

17  according to plaintiff, means that "anyone who is legally responsible" necessarily excludes "workers'

18  compensation law."  Mot. at 12 ("If the phrase 'anyone who is legally responsible' was intended to

19  apply to worker's [sic] compensation carriers, the following paragraph of D3 would not have been

20  necessary.").  The court disagrees.  The second sentence of D.3 provides for the exclusion of

21  duplicate *payments*, while the third sentence of D.3 provides that the insurer will not pay for

22  *elements of loss* to which an insured is entitled under workers' compensation, disability benefits or

23  other similar law.  This does not necessarily distinguish workers' compensation or disability benefits

24  from payments "made by or for anyone who is legally responsible."  Rather, these sentences

25  distinguish between payments that will not be duplicated and elements of loss that will not be paid

26  under the Policy.

27          Second, plaintiff argues that California courts have determined that the language in D.2 and

28  the second sentence of D.3, "anyone who is legally responsible," does not refer to workers'

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT—No. C-06-04534 RMW
MAG                                                         5

**United States District Court**
For the Northern District of California

1  compensation.  In support of its argument, plaintiff cites *Rangel v. Interinsurance Exch. of the Auto.*

2  *Club of So. Cal.*, 4 Cal. 4th 1, 10 n.8 (1992).  Atlantic Mutual counters by citing *Rudd v. Cal. Cas.*

3  *Gen. Ins. Co.*, 219 Cal. App. 3d 948, 954 n.7 (1990).

4        In *Rangel*, the California Supreme Court, deciding whether Cal. Ins. Code § 11580.2(g)

5  operated to all an insurer to bring a subrogation action based on the rights of the insured against a

6  workers' compensation carrier, stated in a footnote that it disagreed with the insured's argument that

7  the language "any person legally liable for the injury or death" refers to a class broader than

8  tortfeasors.  *Rangel*, 4 Cal. 4th at 10 n.8 ("However, we do not agree that 'any person legally liable

9  for the injury or death' refers to a class broader than tortfeasors.").

10        Atlantic Mutual cites *Rudd* in support of its argument that the workers' compensation

11  constitutes a payment "made by or for anyone who is legally responsible.  In a footnote, the

12  California Court of Appeal states

13

14        The payments by an employer, in discharge of his legal liability to pay
      workers' compensation benefits for injuries incurred in the course of

15        the employees work . . . would appear to qualify as a payment by "any
      person . . . legally liable" in reduction of the insurer's liability under

16        underinsured coverage.

17  *Rudd*, 219 Cal. App. 3d at 954 n.7.  The footnote in *Rangel* does not overrule *Rudd*.  In fact, the

18  footnote in *Rangel* acknowledges and cites to the footnote in *Rudd*, stating that the language set forth

19  in §11580.2(g) discussed in *Rangel* is broader than that in § 11580.2(p)(4) discussed in *Rudd*.

20        The language of § 11580.2(g) discussed in *Rangel* reads: "The insurer paying a claim under

21  an uninsured motorist endorsement or coverage shall be entitled to be subrogated to the rights of the

22  insured to whom the claim was paid against any person legally liable for the injury or death to the

23  extent that payment was made." *Rangel*, 4 Cal. 4th at 10 n.8; Cal. Ins. Code § 11580.2(g) (emphasis

24  added).  The language from § 11580.2(p)(4) discussed in *Rudd* reads:  "When bodily injury is caused

25  by one or more motor vehicles . . . the maximum liability of the insurer providing the underinsured

26  motorist coverage shall not exceed the insured's underinsured motorist coverage limits, less the

27  amount paid to the insured *by or for any person or organization that may be held legally liable for*

28  *the injury*."  Cal. Ins. Code § 11580.2(p)(4) (emphasis added).

United States District Court
For the Northern District of California

Because of the difference in language and context, *Rangel* does not inform the present inquiry.  The language of the Policy at issue ("by or for anyone who is legally responsible") is much broader than the language discussed in *Rangel* ("paid against any person legally liable for the injury or death to the extent the payment was made").  Further, the language in *Rangel* was interpreted in the context of subrogation.  In fact, the language of the instant Policy is even broader than that discussed in *Rudd* ("by or for any person or organization that may be held legally liable for the injury"), which the *Rangel* court noted in its reference to *Rudd*.  Further, the Court of Appeal's statement in *Rudd*, whether dictum or not, clearly acknowledges in the context of the statute that the obligation to pay workers compensation "would appear to qualify as a payment by 'any person . . . legally liable' in reduction of the insurer's liability under underinsured coverage."  *Rudd*, 219 Cal. App. 3d at 954 n.7.  The language of the second sentence of D.3, while not identical to the language in § 11580.2(p)(4), is clearly derived from that language and intended to invoke the statute's double recovery protections, as discussed in *Rudd*.  Fast Undercar Inc. or its workers compensation carrier became legally responsible for elements of plaintiff's loss as a result of his accident in the course and scope of employment.  Thus, the policy provides for the offset of workers' compensation as permitted by § 11580.2(h) because plaintiff's workers' compensation recovery falls under the provision of D.2 as a sum paid "by or for anyone who is legally responsible."

Finally, plaintiff argues that the third sentence of D.3, "We will not pay for any element of 'loss' if a person is entitled to receive payment for the same element of 'loss' under any workers' compensation, disability benefits or similar law," could not permit Atlantic Mutual to reduce the amount owed for non-economic damages by the workers' compensation award if the policy limits were not exhausted because workers' compensation did not compensate for non-economic losses.  Atlantic Mutual does not appear to seriously contest this argument, but it has no application to the present circumstances.

### C.   Personal Injury Action Offset

Plaintiff contends that Atlantic Mutual was not entitled to reduce the benefits under the policy by the full amount of the Personal Injury Action settlement wit the other tortfeasors.  He asserts that $31,102.30 of that $65,000 was paid as reimbursement to workers' compensation.

**United States District Court**
For the Northern District of California

1    Atlantic Mutual objects to plaintiff's evidence of this payment.  Specifically, Atlantic Mutual

2    contends that the interrogatory response and document dated June 26, 2000 setting forth the workers'

3    compensation insurance lien against the Personal Injury Action settlement upon which plaintiff

4    relies to prove that reimbursement was made to workers' compensation is merely hearsay.  *See*

5    Objections to Plf.'s Evidence in Supp. of Mot. Summ. J. at 1.  Atlantic Mutual does not otherwise

6    appear to contest plaintiff's position on the matter.  The court shares Atlantic Mutual's concern that

7    the evidence is insufficient as submitted and asks that plaintiff provide a verified statement or other

8    proof that such payment was made to reimburse workers' compensation.  If plaintiff can submit

9    proper evidence that the $31,102.30 was paid out of the Personal Injury Action settlement as a

10   reimbursement of the workers' compensation lien, the court will be satisfied that Atlantic Mutual is

11   entitled to a setoff in the amount of $33,897.40, rather than in the amount of the full settlement

12   amount of $65,000.

### III. ORDER

14       For the foregoing reasons, the court denies plaintiff's motion for summary judgment as follows:

15   1.   Atlantic Mutual is entitled to offset from its policy limits the amount of workers'

16         compensation benefits received by plaintiff as workers' compensation benefits were paid

17         for bodily injury for which the workers' compensation carrier or employer were "legally

18         responsible."

19   2.   Atlantic Mutual is not entitled to offset any portion of the Personal Injury Action

20         settlement that was paid for reimbursement of the workers' compensation lien. However,

21         based on the evidence submitted, cannot grant summary adjudication as to what amount,

22         if any, of the $65,000 Personal Injury Action Settlement is to be refunded to Ruiz.

24   DATED:   _____9/18/07_____   _Ronald M Whyte_____

25                           RONALD M. WHYTE
                         United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Kerri Ann Jaffe             kjaffe@giccb.com
Steven Cavalli             scavalli@giccb.com

**Counsel for Defendants:**

Mark Eric Inbody          minbody@selvinwraith.com
Gary R. Selvin            gselvin@selvinwraith.com

Counsel are responsible for distributing copies of this document to co-counsel that have not
registered for e-filing under the court's CM/ECF program.

**Dated:**   9/18/07                              /s/ MAG
                                         **Chambers of Judge Whyte**